v. Kyle A. Delhaye, Defendant Appellant. Arguing for the Appellant, James T. Malizak. Arguing for the Appellee, Stephen Rogers. We're still in the morning, so good morning, gentlemen. We will proceed if you are ready. Counsel for Appellant, could you say your last name for me? Yes, it's Malizak. Malizak. All right, thank you. And so, Mr. Malizak, when you are ready, you may proceed. Thank you, Your Honor. May it please the Court, James Malizak, appearing for Defendant Appellant, Kyle Delhaye. Mr. Delhaye was convicted of both a felony and misdemeanor violation of the statute prohibiting use of an electronic communications device while driving, which results in an accident causing, again, either a fatality or a serious injury. Here, there was, unfortunately, a fatality from the accident, as well as a serious physical injury. We have two reasons why these convictions should be reversed. I'll summarize them briefly and then delve into them. The first is that the State's evidence does not prove beyond a reasonable doubt that Mr. Delhaye was using his cell phone at the time of the accident and, therefore, could not be the proximate cause of the accident as the statute requires. There was no eyewitness to Mr. Delhaye's of anything in his truck at the time of the accident, and Mr. Delhaye exercised his right not to testify at trial. Therefore, the State was required to rely on circumstantial evidence to show that Mr. Delhaye was actually using his cell phone at the time of the accident, and we believe that, as I will explain, we believe that evidence is much too imprecise to be proof beyond a reasonable doubt. Taken at face value, it is our position that the State's evidence shows that Mr. Delhaye last used his cell phone about 27 seconds before the accident, and since he was traveling at over 60 miles an hour, that was roughly a half mile before the accident. The second argument we ask the Court to grant in reversing the convictions is that the State's prosecution violated the compulsory joinder statute, 720-ILCS-5-3-3 because it first proceeded with traffic violation, failure to reduce speed to avoid the accident. Mr. Delhaye pled guilty to that, received a sentence, and then after that, the State brought these felony and misdemeanor charges, and at the trial of those serious charges, they used his conviction and guilty plea from the first proceeding. The State relies upon the Supreme Court decision in People v. Jackson to say any criminal litigation that begins with a uniform traffic citation by a police officer cannot violate the compulsory joinder statute. The court said we hold today that the compulsory joinder provisions 3-3 do not apply to offenses that have been charged by the use of uniform citation complaint form provided for traffic offenses, and in this case, the original charge was by a uniform traffic citation, was it not? That is correct, but Jackson is distinguishable on the facts here. Jackson was based upon a situation where the State first brought the traffic violations. There were guilty pleas to those, and the defendant was about ready to be sentenced when the State said, whoa, wait, we're actually going to proceed with more serious charges, so we're vacating the initial charge, the traffic violation, and the guilty pleas, and then they proceeded to the trial on the more serious charges, so there was no tactical use by the prosecution of that first proceeding. Those aren't the facts here. Here, the State brought that first proceeding through the traffic citation, got a guilty plea, got a conviction, and then announced it was going ahead with these felony and misdemeanor charges and used at the trial on those charges the guilty plea and conviction in the traffic violation and emphasized that at trial. So, we don't... Well, aside from that latter factor, which is different, what you have here is similar. In this case, originally, he was charged by a traffic citation. He went to court and pled guilty, okay? Then, after the phone had been inspected by a forensic analysis, then the charges were added later, correct? Not quite, Your Honor. No, the State, the police took Mr. Malmstead's phone and they had it taken to... They used the Celebrite machine, which extracts all the data from the phone, and they had that within a week or 10 days later. There was no rush to judgment on the traffic charge because the accident occurred on October 11, 2016. The guilty plea to the traffic violation was on January 25, 2017, about three months later. Mr. Malmstead, to Judge Hudson's point, a different part of the evidence, they did have the Celebrite analysis, but they did not have the accident reconstruction conclusions in terms of, for example, the lack of braking and whatnot until well after the sentence, isn't the plea and sentence, isn't that correct? That is correct, but the reconstruction analysis had nothing to do with the charges against Mr. Delhaix with respect to using a cell phone to cause the accident. Why do you say that? The absence of braking certainly suggests inattentiveness and, one might argue, support circumstantially the idea that he, for example, was using his phone to read text that had come in 23, or as you say, 27 seconds before. Well, what actually happened was that the evidence as to the data on the cell phone was that he certainly was, let me start again, he was distracted. There was no doubt about the fact that he was distracted. The question is, how was he distracted? Was he distracted by the use of the cell phone, or was he distracted in some other way? For instance, looking for a clipboard that he used in his business. At his guilty plea and sentencing hearing on the traffic violation, the state's attorney said to the judge, what happened here is that Mr. Delhaix was looking for his clipboard, was distracted, and this horrible accident occurred. Well, that wouldn't be binding it at the felony trial, would it? That comment during the traffic proceeding, how would that be binding on the felony trial? It might not be binding, but the state used that conviction from that hearing at the felony trial. But what is relevant is the fact that it was adduced to trial, that the police, Detective McMahon, who did the extraction from the cell phone, told Sergeant Vanko, who did the reconstruction, Mr. Delhaix was either using his cell phone at the time of the accident, or he was looking for his clipboard. We also know that Mr. Delhaix spoke to Officer Nelson, who was the first policeman at the scene of the accident, spoke to him. Officer Nelson testified at trial, but was not asked what Mr. Delhaix said. But it's pretty clear that the police knew that Mr. Delhaix's position was, I was looking for the clipboard, it wasn't the phone. Well, and you raise a very good point, because the issue at trial would be, was he distracted? Was he looking for a clipboard, or was he texting at the time of the accident, which would be the basis for the felony charge? But isn't that ultimately, at the end of the day, an issue for the trier effect? Well, it would be. It gives an alternative explanation for why the accident happened. For instance, Mr. Delhaix isn't trying to absolve himself for the responsibility for the accident. It's what caused the accident. And if he wasn't using his cell phone, then obviously, he's not going to plead guilty to doing that. And the state has the burden of proving it. That's what they failed to do. Failed to do what? Failed to prove that he was using a cell phone at the time of the accident. Well, the fact that he was maybe not physically texting out or physically receiving a text in does not mean that he was not engaged with his cell phone, because once the text is in, he reads it. And that is part of texting back and forth. And that could take more than your 27-second window here that you've been talking about. And a jury could consider that, or a trier could consider that. It could consider that. The 27 seconds were the time, as you know, I believe you know, between his last text that he sent out and the reconstructed time of the accident based upon the 9-11 call and the testimony that the accident occurred about a minute before the 9-11 call. But 27 seconds cannot be fully explained by him doing something else with the phone. He sent the text out. The extraction shows that he received a text from Crystal Daniels four seconds later. There's nothing after that showing him using the phone. In its brief here, the state says, well, maybe he was drafting a response. And that would take some time, reading and drafting a response. But Detective McMahon, who testified about the extraction, said the extraction would pick up everything imaginable that was on the cell phone, but it didn't pick up any draft text. So that I think is pretty conclusive. He was not drafting a response to Crystal Daniels after he received her. Are you saying that the law would have to be, his fingers would have to actually be on the phone in order to be found guilty of this? As Justice Hutchinson says, he couldn't be looking at the text that came in or just have completed the text. Isn't that issues for the trier effect to weigh the sufficiency and weight of the evidence? Well, I think it's more like flipping a coin. I mean, there's no evidence past his sending of the text that he was doing anything with the phone. So he could have placed it down, gone to look for his clipboard. There are other things that he could be doing within that time, other than using his cell phone. Of course. And I'm sure that's what was argued at trial. The same argument you're making to us was probably made at trial. And the other thing I want to point out is it wasn't just one text. I think it was a series of texts that he received from Danielle at 23 seconds before the accident for that four minute period, the defendant and Danielle had exchanged 10 texts over four minutes, 23 seconds before the accident, the last text comes into the defendant. Couldn't the jury reasonably infer that the defendant was reading the text and formulating his response given the fact that there had been 10 texts over a four minute period leading up to that? I mean, we don't just have this one text in isolation. We have an ongoing fighter conversation between these two people while he's driving leading up to this. I think your honor, you could take a reasonable inference that when Crystal Daniels text came in after Kyle Daniels last text, that he read it. It came in four seconds. It's a very short text. It would take just really two or three seconds to read it. There's no proof though, of anything after that, possibly. Except the fact that he crashed into a car at 60 miles an hour without braking. Again, but that's the ultimate question. Was it because he was looking at the phone or was he was he looking for the clipboard? And obviously the trier of fact found that he was looking at the phone and was engaged with the phone. So are you asking us to substitute our judgment for that of the trier of fact? No, I think that we're not. I'm not. It's that the standard of reasonable doubt just hasn't been met. That 27 second gap is a huge period of time for this type of case. He's traveling over 60 miles an hour. So literally he could he could have been a half a mile away from the accident scene when he last used his phone. That raises a question of reasonable doubt. How can you decide that he was what he was doing if you don't have either eyewitness testimony, his own testimony, or some technological evidence that shows he was at the end of the day, the analysis when there's a challenge to the sufficiency of the evidence is whether or not we're considering all the evidence in light favorable to the prosecution. A rational trier of fact could have found the elements proved beyond a reasonable doubt. So that's a deferential standard to the fact finder, is it not? It is a deferential standard, but it has to be an inference that is both rational and is more likely than not. It's really the ultimate question. What the state is asking the court to say is we could prove that he was using the cell phone up to 27 seconds before the accident. You can make a rational inference that he therefore continued to do it, although there's no actual evidence that he did. That, I think, is begging the question. That's going too far. That's the ultimate question in the case. It's not just a fact that maybe leads to other conclusions. That's the ultimate conclusion. Let me ask you a very pointed question. When you say proving he was using the cell phone, are you implying that the state must prove because absent a video camera on somebody's dashboard, you're never going to know precisely to the second what he was doing in the car before the crash. But are you saying his fingers again have to be on the phone? Does that have to be actually in the middle of a text himself to prove this case? Is that your position? I think the state would have to have evidence showing that he was distracted by his use of the phone. What about hitting somebody from behind with no braking at 65 miles an hour? Doesn't that imply that he's distracted? It implies he was distracted, but it doesn't tell the trier of fact how he was distracted. Well, circumstantial evidence is, as long as it's reliable, can be used to find someone guilty beyond a reasonable doubt. Do you agree with that? Certainly. There are cases in which that can be perfectly fine. That's correct. If he is writing and saying, I want honesty, write it down as soon as possible, isn't it reasonable to then infer that he's going to keep looking at that phone to see what she's going to write down? They're having a lover's quarrel, it appears. It's pretty much on his mind. He's upset by it. When he says, write it down as soon as possible, that's a text he wrote. He's not going to be looking for what she's writing down? It could be, but as I say, it's only a few seconds. You can't get to 27 seconds from that possibility. You maybe can get to nine out of the 27. Essentially, he's still a third of a mile away from the scene of the accident. There are other problems with the state's evidence other than the fact that they can't close this 27 second gap. They had no expert looking at his cell phone to determine whether the timing in the phone was working properly, what timing system Apple uses for cell phones. They then tried to mesh it together with the timing from the 911 call, but they had no expert evidence as to what timing system is used by the 911 system. We really don't know if it was 27 seconds or 37 seconds or 17 seconds. The evidence was just not there. That was the state's burden. That wasn't Mr. Delahay's burden to disprove it. They had to show that this timing evidence was accurate and reliable. They didn't. All they had was a testified about extracting it. Didn't Danielle's testimony corroborate the timing in the text? No, not at all. In fact, that's a huge problem with the state's case. When Crystal Daniels testified, she was asked by, I believe it's defense counsel, did the police ask for your phone? They said, well, I met with them and they asked me about the phone. I think this was about nine days after the accident. She said, I didn't have it in my possession then because it had failed the night before. It's a little unclear from her testimony, but I think she's saying I had to send it out to have it repaired. The state never sought either the phone, her phone, or the US cellular records for her account. At trial, she testified that the didn't have her own phone. She said, well, yeah, that looks about right, but she couldn't be refined about that. She really had no basis for saying that was the exact time that text was sent or this text was sent. It would have been interesting. I think the state had an obligation to try to show how the times from her phone for those texts lined up with the text from his phone. We just don't know. All right, counsel, you have used your time at this point and you'll have an opportunity to respond, but we need to move on to Mr. Rogers. Thank you. And Mr. Rogers, if you are ready, you may proceed. Thank you, your honor. Good morning, your honors. Counsel, may it please the court. My name is Stephen Rogers and I represent the people of the state of Illinois. Your honors, the defense raised two issues in this case and all addressed the rejoinder issue first, because I think there are two clear legal basis for this court to reject his arguments. First, as alluded to by Justice Hudson, is the Supreme Court's decision in People versus Jackson. And I won't repeat because Justice Hudson essentially quoted from the case that section three dash three does not apply to traffic citations written by uniform traffic. And so that's the first basis for this court, quite simply to reject the compulsory rejoinder argument. And then second, even if a traffic citation could be applied to the compulsory rejoinder statute, the several offenses must be known to the proper prosecuting officer at the time of commencing the prosecution. And when the traffic citation for failure to reduce speed is no one knows what is on the phone. Defendant turned over his phone, but without the extraction, the officers would have never gotten access to the text messages because defendant had deleted them. So really, defendant is the one that caused any delay between gathering the text message evidence and the traffic citation. And moreover, for a felony case, you would expect the state's due diligence. And that's exactly what occurred. You have the state moving very quickly to get the cell phone data, an interview of Crystal Daniels on October 20th. They meet with reconstruction experts on November 2nd. They received the reconstruction report on June 20th. And then the information is filed on July 7th, 2017. And so even if the compulsory rejoinder statute was applicable, the facts of this case essentially don't fall within that statute. Well, Mr. Rogers, they did have, the state did have the cell bright or whatever it's called, extraction, as you've indicated, much sooner than the complaint was filed. I mean, is there any case out there that says you can only wait X amount of months or you can, or you have to do it within a significant or within a period, this period of time, or there is a problem or the case is not that definitive yet? Well, your honor, I would respond that the statute itself is definitive and setting the time. And it is whether the several offenses are known, and this is quote, at the time of commencing the prosecution. So that would be at the time commencing the initial prosecution are the several offenses known to the proper prosecuting authority. The traffic citation was issued on October 11th. So based on the statute itself, that would set the time. Defendant of course has all sorts of other remedies, you know, a pre-indictment delay. If the state drags its feet for a number of years, constitutional speedy trial, there are all sorts of other remedies outside of the compulsory rejoinder statute. If a defendant believes that the state took an inordinate amount of time to prosecute a case. And I would just reference some of the cases cited in the brief, a case like people versus dismute. There's a search of a defendant's residence and you have drugs and a gun found along with proof of the defendant's residence. This court said, look, you found everything in one search. Once you prosecute the drug charge, you need to also prosecute the firearm charge. But again, here the state, when the failure to reduce speed citation was issued on October 11th did not have the evidence to be. And this is also a standard from people versus Luciano. The evidence has to be known. And that means the conscious awareness sufficient to give the state a reasonable chance to secure conviction. And that just wasn't there on October 11th, your honor. Okay. Thank you. I'll turn to the sufficiency of the evidence argument and your honors. This defendant alludes to this clipboard being a possible alternate theory, but there was no evidence introduced a trial that the defendant was actually looking at a clipboard. Defendant cites to his guilty plea, but that the only reason that is in the record is because it was in the litigation of the compulsory joinder issue that was not introduced at trial. And so there really was no evidence that the defendant was looking at a clipboard outside of an officer saying he potentially was while we're investigating it. That is certainly not something that trier fact would rely on. Mr. Rogers, how do you respond to the argument that the state had the burden to establish the accuracy of the timing of the text messages? Your honor, I would respond that the state does have the burden to establish that in the state did. So as your honor questioned, uh, defense counsel, we get the transcript in. And so if you have any doubts about the transcript, the state asks, and this is on pages 105 and 106 of the record. Um, did you and Kyle Delhey, this is questions to Crystal Daniels. Did you and Kyle Delhey engage in the series of text messages in the afternoon that day? Yes. And shortly before three in the afternoon. Yes. Did you send him a text? Yes. Did he respond? Yes. And how quickly, almost immediately. Um, so if there was any doubt about the accuracy of that beginning directly before three p.m. And then she says the responses are almost immediate. And then she confirms that the communication stayed constant. So there was no break in the communication and defense counsel, I believe, responded that. Well, how would she know? How could she be that accurate? Well, defendant lets her know the night of the accident that he's in serious collision, and then it's going to cause lots of legal trouble. So that certainly would give miss Daniels a reason to kind of lock in her mind. What happened that day? Thank you. And I also want to refer defendant, uh, kind of operates under the assumption that this collision occurred exactly one minute before the 911 call when the relevant testimony was that it could have occurred anywhere between one minute and two minutes before the 911 call. And that's a accumulation of the evidence of the 911 call from a gentleman named Miles and then also Jessica Romero's testimony. And she's the eyewitness that's coming south on the intersection. Her car is completely covered in debris and soil. She explained it like a bucket of water dumping over her car. She has to proceed through the intersection to safely park. And then she heads back to the crash scene. Um, and at that point, she says she was gonna call 911. But she happened to hear others doing it, and she didn't want to be disrupted. She says that the call could have occurred between one up to a maximum of two minutes. So based on that testimony, we have a window from 301 18 being the very earliest that this could have occurred in 302 18 being the latest. And in that one minute period, you have four messages to from each person. And, um, so it's clear defendant is using his phone all the way up into the last seconds before this collision could have occurred. And it's important to look at the nature of these communications because defendant just argued that Crystal Daniel's message at 301 55 was a relatively short message that could have been read. But the actual text message is you could be as mad as much as you can, but it's not all my fault. You had a lot to do it. And that's really the messages look like they're getting more heated. Defendant's last message. I can't stand lying to my face. Um, there's no indication in these messages that there's about to be a break in the communication there. It's if anything, getting more heated. It's obviously a dispute about something within the relationship, and it's certainly reasonable to believe that defendant continued to act as he had for the prior four minutes. Is there any requirement in this statute that specifically says the defendant must be actively engaged with his thumbs or fingers or anything on the keyboard in order to be convicted of this offense? No, Your Honor. And I believe the you essentially just have to be utilizing the electronic communications device. I believe that would cover a very wide range. You could be texting. You could be reading a text. You could be taking a picture. You could be filming a video. I mean, you could be doing any number of things utilizing the electronic communications device, and that would all be covered under the statute. And there is a state proves the causation. I was looking for it at this point there. Isn't there a first district case from about 2017 that says it's logical to infer that if you get a text message and you've been in a conversation, you it is likely you will be looking at the responses or waiting for additional responses, something of that nature. I can't remember the case, but it's like something with an M. I'm sorry, I can't find it right now. Your Honor, I'm not sure if I saw that case. I know there are cases. There's a case out of the fifth district about taking a picture, driving down the road and taking a picture, and that constituted utilizing. But the statute certainly doesn't read in a narrow manner that you have to be sending a communication or receiving a communication. But and I think I cited general case law for the proposition that a trier fag doesn't have to decline to use common sense. If if a defendant is engaged in a four minute conversation with 10 messages, you likely assume he's acting in accord with that for the next 30 seconds, absent some intervening reason. You know, I had the defendant said, Hey, I'm about to pull on onto the street. I gotta go by. Well, then maybe that would be something where you say, Hey, look, into that conversation before you got on the road. But there's certainly nothing within this text transcript that would support that argument. Is there anything and again, I maybe I missed it. Anything in this record that indicates when these texts were deleted with reference to the time frame of the accident? No, Your Honor, but it would have to have been from between when the collision occurred and when his phone is handed over at the hospital, which I believe was approximately one to two hours later. And all the tree of the data, he at least said he wasn't the one that deleted them. The only other person that would have been in possession of the phone would have been defendant. And so it occurred sometime either in transport to the hospital or at the hospital. And any event within two hours of the accident, is that what you're saying? Yes. And can we take that action or that fact as although maybe it hasn't been decided that way in a case yet, but the fact that the officer didn't delete them and the only other person who had control of the phone was the defendant, that that might be some evidence of his concern or guilt concerning using the phone or using the text? Yes, Your Honor. I think, yeah, it's obviously in the digital age now, but it wouldn't be much different than disposing of any other evidence or flight evidencing a consciousness of guilt. You know, if defendant would be believed that he put the phone down a half mile from the collision and he's looking at a clipboard, one would think it wouldn't be on your mind to delete the text messages on the way to the hospital. Whereas if you were actually engaged in the conversation during the collision, you might, you know, you think deleting the text messages might be beneficial to the investigation from a defendant's perspective. And once again, the judge heard all of these things. Absolutely, Your Honor. And, you know, defendant does a pretty good job of isolating all the constructions. If you just look at the consciousness of guilt, none of those independently are going to prove a defendant's guilt. But when you put them all together, you have really four or five pieces of strong evidence all linking up and all telling the same story that defendant was using his cell phone in the moments immediately preceding this collision. And essentially, they're pretty circumstantial, correct? Other than maybe Ms. Daniels relating to this is the timing that I recall. Most of it then is circumstantial. Yes, Your Honor. I mean, if you just have any one of these pieces of evidence, you probably couldn't prove the defendant's guilt because you need the 911 calls and the eyewitness testimony to put in context the timing from the cell phone transcript. And you need Ms. Daniels confirming that information. And then you have the reconstruction, which really places in context what was going on with the defendant's vehicle, how fast it was going, whether there was any braking. So it is in large part a circumstantial case, but it's a very strong one at that. Thank you. Thank you, Your Honor. If Your Honor don't have any further questions, then the state would respectfully request that this court affirm defendants convictions. My colleagues, any further questions of Mr. Rogers? I have no further questions. I have no further questions. Thank you. All right, Mr. Mousy. I can't do it. I'm sorry, counsel. Do you have any rebuttal you wish to offer? Yes, Your Honor. First on the timing issue, counsel was relying upon Ms. Romero's testimony that she saw the 911 call being made, and she thought it was about a minute, maybe a maximum two minutes after the accident. That I think typifies the state's case in terms of imprecision. When you talk about a possibility of a range of one to two minutes, you're talking about a mile from the accident scene. And that certainly raises questions about reasonable doubt. When the entire case turns upon precise timing, the evidence has to be similarly precise. And as I've explained, it certainly isn't. What about Justice Hutchinson? Go ahead. I was just going to say, counsel, you know, I've heard a lot of criminal cases, both from a trial perspective and from this appellate perspective. And I am trying to recall a case that we have a precise time when something occurred, other than when we have, for better or for worse, an admission from the defendant. But that's not required. The state is not required to provide that precision. In fact, in certain child sexual abuse cases, it just has to be within a general range of months or years. So I don't understand where you're getting this issue that there has to be this precision in this particular case. And I guess if you can give me a case, I'll certainly look at it. Well, that's an issue. I think this will be one of the first cases on these types of issues. I certainly haven't seen any. But the precision is required by the nature of the statutory charge and by the facts. I mean, you have to show that Mr. Delhay was using his cell phone in a way that proximately caused the accident. Well, it can only be proximately caused by his use of the cell phone if he's using it at the time of the accident. And there, the precision is necessary because we're talking about seconds. You can't round them off to minutes. We're talking about seconds. And without that, there's too large an area of doubt. Well, as it relates to that, accepting that there has to be, that the state has to prove beyond a reasonable doubt that the use of the phone was the proximate cause of the accident. Isn't the jury entitled to give some serious consideration to the fact that the defendant deleted these texts and asked Danielle not to text him anymore? As to consciousness of guilt? I mean, if you weren't using or texting or using your phone at the time of the accident, why would you ever delete your texts? Well, first, let me address that issue, Your Honor. First, it's important to note that the trial judge here did not rely on the consciousness of guilt concept, which the prosecution really pushed at him. He said, I am not relying on, in my guilty verdict, I'm not relying on anything that Mr. Delhay may have done after the accident. So he didn't find it probative. And I think that was correct because of the other facts in the record. If Mr. Delhay was so intent on eliminating evidence of his text because he thought that shows that I was using my cell phone at the time of the accident, the first thing he would have said to Crystal Daniels that night was, gosh, you got to get rid of all the text on your phone that we had today. I got rid of mine. You get rid of yours. He didn't say that. He didn't say that at all. So it wasn't on his mind to try to get rid of this evidence. And the state argued in the trial court that he was deleting this data in part to hide Crystal Daniels' identity from the police. If they didn't see text to and from her, they wouldn't know that she's a relevant witness to this. But in fact, the extraction report shows that there were six texts on the report right at the end of the use of the cell phone that for between Mr. Delhay and his employer, but two from Crystal Daniels at 31031 and 31001. And these weren't deleted. These weren't deleted. It shows they were read. So Mr. Delhay read them, but he didn't delete them. So they're looking straight at the police when they looked at his phone for the first time was Crystal Daniels' name and her phone number. So there was no hiding of evidence here. Mr. Milosevic, you're not contesting the fact, are you, that as Mr. Rogers says, the deletion of the text messages to Crystal would have had to occur within a couple of hours of the accident, correct? That's right. Okay. So unless the police would have deleted his messages, which would make obviously no sense at all, who would have deleted them? I don't think it's an issue about who deleted them here. I think there's a rational inference that Mr. Delhay deleted them. The question is why? And again, the trial judge found it wasn't consciousness of guilt. He didn't rely upon in his guilty verdict. Even if the trial court said that, and that factored into his ruling, we can consider it. It's evidence in the record in terms of affirming if we so choose, if we think it's relevant, can't we? Oh, you certainly can. But again, there's usually, as you had mentioned earlier, there is a deference to the trial judge who saw all the witnesses, has really studied all the documents. And he came to that conclusion, which to me was very striking, that he would make that a point of his decision. So there could be many reasons why someone deletes texts after he reads them. If Mr. Delhay had used, was looking for his clipboard when the accident occurred, trying to hide evidence of his use of text messages would not have been an issue for him. So, and his decision not to delete those two final texts from Crystal Daniels, I think, speaks volumes. He was not trying to hide the fact that he had text messages. In fact, her text messages, if you look at them, are clearly referring to earlier text messages. So the police looking at that would not have been confused by the fact that Crystal Daniels and Mr. Delhay had been texting one another that afternoon. Mr. Malasek, as you have alluded to, this is a relatively new statute, the parameters of it perhaps remain to be construed. Have you looked into the legislative history of the statute at all? I was not able to find any, Your Honor. Because it would seem to me, I'm curious as to what the legislature intended by the phrase unlawful use, focusing on the term use of a phone. You seem to be arguing for interpretation that you should be confined the person actually in the act of texting in order to be guilty under the statute. Is that your position? No, I would think if it could be proven, which you can't hear, that he was doing something with his phone that distracted him and therefore caused the accident, that would be sufficient. Well, that could never really be directly proved, could it? I mean, in all fairness. Well, this is an unusual case that way, you know, prosecutorial discretion as to why they chose this case to be one of the first under the statute, but they had no eyewitness testimony, they had no testimony from the defendant. So they really were pushed back on a technological case. And so I think in this court's ruling, it would be very important to give guidance to police departments on this important issue that you should have an expert in these communications ready to go when a serious case like this hits. So he can examine the phone, make sure it's reliable, that the timing is accurate, do testing of the 911 system to see how it coordinates with the cell phone timing system, alleviate all these problems that we have now in the record here, and be fair to everyone. I think you're right from an ideal standpoint, but as Justice Hutchinson alluded to, can't circumstantial evidence be used to sustain the state's burden? It can, it's a question always of degree. And here, I think it's a big leap to go from what the state actually presented in terms of the timing evidence, just saying that Mr. Delhay was using his cell phone at the time of the accident. But you've extensively conceded there are no cases yet construing the phrase use and what that entails, correct? I haven't, no, I didn't find it. Okay, thank you. All right, counsel, your time has concluded. If you have anything you want to summarize, you may do so. Yes, I think that it's a crucial case for this court to give guidance to prosecutors in courts throughout the state as to how this statute should be applied. And I think the message here is it shouldn't be applied the way it was done in this case. You really need expert testimony to resolve these questions. If it shows that the defendant could have been using his cell phone at the time of the accident, that's fair to the defendant. If it shows he was, move on to the prosecution. But these things should be addressed right away. They weren't addressed at all here. All right, thank you very much. And to both counsel, thank you for your attendance here today and participating with us in this fashion. Hopefully someday we will see you in person before we're all too old to remember what in person is. And we will take this matter under advisement. We will issue a decision in due course. We are now going to adjourn for the day. We have concluded our docket of oral arguments. So once again, thank you and you are released. Thank you, Your Honor. Thank you, Your Honor.